the calendar. I will turn to the first case on our calendar, Christian Charles versus Jerry Seinfeld and others, and invite the attorneys to begin our argument. Good morning, your honors. I'm Peter Skolnick of Clark Golden for the appellant Christian Charles, and I've reserved two minutes for rebuttal. Your honors, and may it please the court, this case is about authorship. Under section 201A of the United States Copyright Act, copyright in a work vests initially in the author or authors of a work. Defendant's assertion that Mr. Charles did not dispute that the primary copyright dispute here concerns ownership of the show, is, if I may, unmitigated balderdash. Mr. Charles, this is Judge Lynch, excuse me, but how can you say that? Your first words to us were, this is a case about authorship. Authorship is one aspect of ownership. You can own it because you're the initial author, or it might, in some way, the authorship could be transferred, or you could author it as a work-for-hire, and the contention, as I understand it, of the defendant is that Mr. Seinfeld, or some combination of the defendants, are now the owners of the copyright. Why is that balderdash? Well, because they say that Mr. Charles has acknowledged that the case is about ownership, and on the contrary, he has always said that it is about authorship. Well, excuse me, first of all, I'm not sure that I understand the difference, and secondly, why does the plaintiff have to agree that it's about authorship? Isn't that a question of law for the court to resolve as to what is centrally in dispute in the case? It is a question of law. I think we lost the lawyer there. I do see his number here. He's still connected. I'm sorry to interrupt. Yes, Maria, I think what the problem may be, if he's on a cell phone, you know, I have tried to use a landline for this because they're more reliable, and he may be just losing his connection somewhere. Your Honor, I am on a landline. Are you able to hear me? Now we're able to hear you, yes. Thank you. All right. I was saying that what I'm complaining about is their assertion that Mr. Charles has not said that the case is about authorship, that he has acknowledged that it's about ownership, and that's simply not the case. Excuse me. I understand that you dispute it, so let's get down to the point of why is the district court wrong to say that this is not a dispute about ownership of the copyright? As I look at the arguments that have been presented, this is not a case in which someone is arguing, oh, yes, of course this person has a copyright in this particular item, but we didn't copy it. We didn't know about it. We never heard of it. We may have heard of it, but we didn't rely on it or use it in any way. Those are the kinds of disputes in which the cause of action, as I understand the law, accrues anew with each new copying. But here, the argument seems to be all about who is the true owner of the copyright, and Your Honor, there really cannot be any question about who is the true owner of the copyright, because before this dispute even arose, Mr. Charles had, and there is no question about it, Mr. Charles wrote a script. He wrote a treatment. He directed the pilot, and under the Copyright Act, from the moment he did so, from the moment those items were fixed in a tangible medium of expression, he owned those copyrights. But what if the next day, what if the next day that was assigned to someone else, or what if that authorship was done as a work-for-hire? In those situations, he would not own the copyright. Now, I'm not talking here about the merits of whether those things occurred. I'm talking about this is what this case is centrally about, and how that impacts the statute of limitations. Your Honor, you're quite right that had he transferred his copyright, had he signed a work-for-hire agreement, then he would no longer own them. But none of that happened. From the beginning, Mr. Charles has made it clear that he never signed a work-for-hire agreement, that none was ever offered to him, that all that happened was that Mr. Seinfeld said it's a work-for-hire, but just saying it does not make it so. There was no transfer. Counsel, this is Judge Kula. I'm sorry to interrupt, but I want to ask a question. When did Mr. Charles know that the Steinfeld Group contested his ownership? When did he know that? Well, he didn't really know that they contested his ownership until the motion to dismiss was filed. The fact is that they made various claims that he didn't own anything, but those giving him credit after the first pilot? They did, Your Honor. Wouldn't that have eroded him, the fact that they contested ownership? Your Honor, they were contesting ownership, but there was no basis to contest ownership. Well, but isn't that the whole point? If they are contesting ownership, even if they are doing so erroneously, then the true owner of the copyright is unnoticed, that he's got a problem, that people are in effect, and it's sort of like a kind of patent infringement thing, that the other side is using his work without authorization and is claiming that they own it. Once you know that, why don't you have to go to court to vindicate your copyright interests? Well, Your Honor, I think the simplest answer to that comes from the Petrella case, where Judge Ginsburg made it quite clear that there is nothing wrong with waiting to file suit if you believe that at the moment, litigation is simply not worth it because there is no money to be collected. Mr. Charles was under the impression, and Mr. Seinfeld acknowledges as much to colleagues, that there wasn't any money in this thing. And under Petrella, Mr. Charles was well within his rights to wait until that point when the work that had been taken from him was being exploited to enormous financial benefit. But isn't that a little bit naive in the current entertainment environment? Wouldn't any reasonable person understand that a program that's being floated on internet media that may or may not be making money now, particularly when that is a product of a well-known celebrity whose name has some value, is on its way to being tested as something that might well be extremely valuable? Seems to me a remarkable proposition that you can allow this to go forward and only at your to develop the product and just come after them when it suits your convenience many years later. Your Honor, the fact is that there was no logic to Mr. Charles bringing this lawsuit at the point when Mr. Seinfeld first said this is a work-for-hire because it wasn't a work-for-hire. Excuse me, can you take a moment and listen to the question? Wasn't there an active dispute, in fact, between the Charles side and the Seinfeld side about payment for the initial work in producing the pilot? No, that is a distortion that the defendants have created. I was just relying on what's in your complaint, that you had to go after them to get paid. We had to go after them to get paid, not for Mr. Charles's creative contributions, but for the work, the production expenses that Mr. Charles's company, Mouse 4, had incurred. That entire $107,000 payment was for production expenses. It had nothing whatsoever to do with Mr. Charles's creative contributions as the author of a script and a treatment and a pilot. So we were going after them only to try to recoup some actual out-of-pockets that we had incurred. You did not understand at that point that they were claiming to own the pilot, and that you did not understand at that point that there was a contest about whether Mr. Charles would participate on the back end, as it said. That was not something that was known to you. It was not known for the simple reason that the discussions about Mr. Charles's participation on the back end were going on separately, not between Ann Estanillo, Mr. Charles's wife, who was involved in those discussions about the $107,000, but separately by Mr. Charles's representatives and Mr. Seinfeld's representatives. They were discussing the back end. Well, but separately or together, aren't you just telling me that there was at that time an active dispute, not just about the abstract question of credit, but about money and what money would be earned by Mr. Charles on the back end as a result of his creative contributions? You're saying that there was then a recognition by Mr. Charles, A, that Mr. Seinfeld and his people claimed to there was back end money to be had someday, perhaps, and that was something that was worth negotiating, arguing about, and I suppose then suing about if no resolution could be reached that was satisfactory. There was no recognition at that time that Mr. Seinfeld and his representatives were claiming that they owned this project and that Mr. Charles would receive nothing. That was subject to a negotiation. It's much like the author of a book doesn't demand an ownership interest from a publisher. He negotiates his royalties and his shares of subsidiaries. Counsel, this is Judge Kula. When the show premiered in July 2012 without crediting your client, isn't that the point at which your ownership claim was publicly repudiated? No, Your Honor, because what Mr. Seinfeld did was to arrange, in order to protect his position that somehow there was some significance to the lack of a credit, what he did is he arranged that no one, no one got any screen credit whatsoever on the show. It really was a remarkably selfish and outrageous act because in the entertainment industry, as we all know, when you look at a show, the credits that run at the end of the show go on for pages and pages and pages. What Mr. Seinfeld did by denying anybody credit was he took away the expectations, not just of Mr. Charles, but of everybody who had worked on the show. It was a very deceptive act to make it seem like Mr. Charles wasn't entitled to anything because he didn't get any credit. Excuse me, Mr. Walker, isn't the fact that there were no credits an indication of Mr. Seinfeld? Seinfeld, you've been talking now about what Seinfeld did about denying the credits. Isn't that an indication of his claim of ownership? Only an owner could do something like that. And therefore, your client wouldn't have noticed at that time that the owner was denying everybody credits. Your Honor, I fear that we are losing sight of a fundamental principle of copyright law, which is that from the moment that Mr. Charles wrote the things that he wrote, he became the owner of the copyrights and nothing ever divested him of that ownership. The only way that he could have been divested of that ownership were by signing a transfer under Section 204 or by executing a work for hire agreement. And he did none of that. So what we had here was the absolute owner. Counselor, is there a way I can ask the question? The fact is that it's not a question of whether your client believed he was the owner. The question is, was there a dispute that was understood? And certainly by the time of the Sony streaming, which was in 2012, in the summer of 2012, he was aware that Seinfeld was acting inconsistently with your client being the owner. Don't debate whether or not he was the owner. That's not the issue. The issue is whether or not there was a dispute that was or your client was on notice, sufficient notice, to want him bringing a lawsuit. And if there was a dispute at that time, and it seems evident that your client was the owner, it doesn't matter who was the owner. The fact is that the suit wasn't brought until till 2018, which is more than three years after 2012. Yes, your honor. But but in in virtually any infringement case, which is what this is, a defendant can insist that ownership is the issue. Even even in a rare case, when a says I'm the sole author, and B says, No, I am a defendant who can actually make some demonstration of authorship, which Mr. Seinfeld cannot, he has never maintained his authorship of anything. Even in that case, he can argue that the issue is not authorship and ownership, because whoever is the true author is the owner. And here How do you get around on and Simmons, which we've we've held, said that the infringement claim is time barred where the ownership claim itself is time barred? Well, because because there was there was no basis here for the ownership claim to be time barred. There was no basis to dispute that Mr. Charles was the owner. And I don't know that she's just so I just thought we discussed the fact that in January 2012. And again, in the summer of 2000, in January 2012, there was a dispute over whether or not your client could get back end payments, which in which is an indicia of ownership. And then to be more your client is sees the sees the pilot in 2012 in the summer. And Mr. Seinfeld is denying everybody credit and certainly acting as if he were the owner, producer and everything. And your client does nothing so that so you were on notice of a claim of ownership by Seinfeld. That's the point. We were we were on notice, Your Honor, of a claim by Mr. Seinfeld. But Mr. Seinfeld and the thing that distinguishes this case from Kwan and Simmons and all of the other cases that either party has cited or any case that I am aware of is that in all of those cases, the defendant was unquestionably an owner of the copyright, was unquestionably an author of the copyright. And a plaintiff was coming in to say, oh, I'm also entitled to some share of that copyright. But in this case, there was no basis for Mr. Seinfeld to be claiming that he was the author of anything. He didn't write anything. He didn't direct anything. He didn't produce anything. He was and I've used the phrase a stranger to the copyright. I'm not saying that he was a stranger to the show, but he was a stranger to the show's copyright because there was no basis for him to be owning any part of the copyright. And that's where we'll have to end here. Your time has long since expired, but you have retained two minutes for a rebuttal. We'll hear from Seinfeld et al. Thank you, Judge Pooler. Good morning. May it please the court. Judge Pooler, Judge Walker, Judge Lynch, this is Oren Snyder for Jerry Seinfeld, Sony, Netflix, and the other appellees. Your honors, I think the questions from the panel and counsel's argument illustrate not only the fundamental purpose, but importance of enforcing the Copyright Act's three-year statute of and in Simmons. And this case really more than maybe any other illustrates why this is so important. And as this court has held and noted in cases, and then the district courts in reliance on this court's authority, the limitations period isn't some technical bar or some mechanical rule. It really fosters the core purpose of the Copyright Act, which is of course codified in the United States Constitution, which is to promote creative works. And as this court has observed, the certainty and repose of a statute of limitations is particularly important in ownership cases because parties like Sony and Netflix and Mr. Seinfeld and their business associates and investors invest a lot of money and time and creativity on developing creative works, and they want the certainty to know that they are free to do so. And then the courts note that it's unfair for plaintiffs to lie in the weeds for years after their claims have been repudiated while they wait on the sidelines to see how big the pot of money is and then strike when the iron's hot. And that's exactly what happened here, of course. And I'm not going to... Your honors are obviously, by the questions, well-versed in the fact I'm not going to belabor them, but it's clear that the district court correctly held that this case is controlled by Judge Pooler's decision in Quan and based on the allegations in the complaint as Judge Lynch indicated. And there's no question that the backbone of plaintiff's copyright claim here is contested ownership of a work, and Judge Lynch is absolutely correct. He was my boss once, so I can say that if he was attorney's office that he's usually correct. But this case is about ownership, and there's no difference between authorship and ownership under the statute of limitations framework established by the Second Circuit. And in fact, that same argument was used in the Quan case, and there is no different statute of limitations because, of course, as Judge Lynch indicated, authorship is just one path to ownership. And then as Judge Walker and Judge Lynch noted, there's no question on the allegations of complaint that not only was there a dispute in 2012 before the show aired about ownership, but Mr. Seinfeld made crystal to Mr. Charles that he was a work-for-hire director and no more. This court has ruled in the Wilson case in 2018 in a different context, but when one person asserts a work-for-hire relationship with another, that is with crystal clarity an assertion that I am the owner and you employee. So that is about as clear repudiation of plaintiff's ownership as exists in the case law. But of course, we have much more than that here as Judges Walker and Lynch observed after the private repudiation, which was also buttressed by a release that the plaintiff signed saying that he was releasing any and all claims to future monies. And of course, this is an active live dispute about the court issue, the backbone of this case, ownership. The clock started then. He didn't sue for six years later. And then, of course, the public repudiation, as Judge Pooler noted, were manifest. The show premiered to a huge fanfare, and as Judge Lynch indicated, this wasn't a show by an unknown. This was by Jerry Seinfeld, one of the most well-known television personalities in the history of television. It was an overnight success, nominated for Emmys. And of course, Plaintiff was not credited in any way on that production. And at the same time, Mr. Seinfeld was in the press claiming to be the sole author. Again, it's difficult to imagine a more clear and express assertion of sole ownership than that. And then, not to beat the course even more dead than it already is by this point, 100 million streams, Emmy Award nominations, and Plaintiff all the while sitting on the sidelines, laying in wait, not receiving a dime of royalties or payments typically associated with ownership. And this court in the Roc Nation case held that failure to compensate a purported owner through royalty payments constitutes an express repudiation of a plaintiff's ownership claim and triggers the accrual. And so, that's even more evidence of repudiation. And tellingly, Plaintiff didn't object to voice a complaint to utter a peep about Mr. Seinfeld's ubiquitous assertion of ownership until, of course, there was a public announcement that Netflix and Mr. Seinfeld were moving the show from the internet platform to the streaming platform in a very lucrative deal. And he comes out of the woodwork demanding money six years too late. I just want to briefly address some of the arguments made. Kwan stands powerfully, as I said, for the proposition that disputes about rejected. Counsel just moments ago admitted in his argument that we were contesting ownership, or Mr. Seinfeld was. That's an admission during this very argument that there was a private repudiation six years before he filed suit. Counsel cites Justice Ginsburg's decision in Petrella. That case did not concern ownership. Ownership was not disputed in that case. Petrella doesn't create any exception to the three-year statute of limitations. In fact, that was a case involving an equitable defense of laches to a lawsuit brought within the statute of limitations. So, that case is not in as far a field. It's completely irrelevant. Finally, this notion of Mr. Seinfeld being a stranger to the copyright is perplexing and completely counterfactual. Plaintiff concedes in his own complaint he had zero involvement in the show after he agreed to release any rights or claims to the show in April of 2012. And your honors, comedians in cars, to use a metaphor, is not a self-driving vehicle. Jerry Seinfeld is the driver, has been all along, and in every statement he made, every public, private, and implicit act constituted a clear repudiation of the plaintiff's claim. Let me just end, your honors, by saying this. If you look at paragraph 70 of the complaint, another self-defeating allegation that is kind of the icing on top of the cake of these multiple repudiations, he alleges Seinfeld further claimed that Charles should expect to be compensated through his directing fee, close quote. Of course, that is a fact pattern, an allegation that in and of itself is fatal because it indicates that as early as 2012, Mr. Charles knew that Mr. Seinfeld disputed any claim of ownership, was asserting that he was the owner, and no one else. So in closing, your honors, this is a paradigmatic case for application of the three-year statute of limitations bar, and we respectfully request that the court affirm on all grounds. Thank you. Thank you, counsel. Mr. Skolnick, you have two minutes for rebuttal. Mr. Skolnick? I wonder if his phone cut out again. Hello, can you hear me? Yes. You have two minutes for rebuttal, Mr. Skolnick. Thank you, your honor. The fact that Mr. Seinfeld is a well-known celebrity doesn't make him any more entitled to gather ownership without a work for hire than if he were a nobody. You know, in terms of the repudiations, Mr. Seinfeld publicly claimed to be the owner, but he also claimed 14 times, according to the defendants, that he had directed the pilot. So that repudiation is not to be taken seriously. And they insist that Mr. Seinfeld saying that this was a work for hire constituted a private repudiation, but there was no director's work for hire agreement ever executed, and a work for hire agreement for Charles's authorship owned the copyrights in the treatment and the script and the pilot. Nothing ever divested him of that ownership. So to say that the case was about ownership is simply not correct. There was never any question about the fact that Mr. Charles owned what he owned, and there was no alchemy by which Mr. Seinfeld could become the owner and pass on that ownership interest to his co-defendants. Mr. Charles created things. From the moment he created them, he owned them, and nothing gave those things to Mr. Seinfeld. You know, the fact that the show was distributed without paying Mr. Charles any royalties didn't constitute an implicit repudiation. Instead, it constituted either an infringement of Mr. Charles's copyright or a breach of Mr. Seinfeld's obligation to account to Mr. Charles in the event he is eventually found to be a joint author. But again, Mr. Charles owned what he created. One of those things was the pilot episode, and there was no basis for Mr. Seinfeld to claim that he didn't own it. There was no basis for Mr. Seinfeld to claim that because Mr. Seinfeld did not own anything. He couldn't own anything because he had created nothing. He had written nothing. He never claimed that he wrote anything. He never claimed that he made any copyrightable contribution to the show. Now, of course, he says that it's all about me. I did everything, including direct it. But that is simply not the case, and there was no discovery that would have revealed exactly what it is that had happened. Could I come back again, Your Honors, to the point that under Kwan, and as the district court said, yes, a non-owner can repudiate a claim of ownership by a plaintiff, as long as the plaintiff is not also the owner. But here, the plaintiff was the owner. Mr. Charles was the owner. Nothing ever made him not the owner. Thank you, counsel. We will reserve the decision.